May it please the Court, Your Honors. Brian Connery on behalf of Mr. Prieto-Romero. I would like to reserve five minutes, if I may. That'd be fine. Your voice is very soft. Would you pull that microphone and get as close to it as you can? Sure, and I'll speak up, Your Honor. Much better. I think this is a case where we have something new for the Court. I can't give the Court a case that's exactly like Mr. Prieto. I haven't seen one. I've read a lot of cases, and I do think that the application of the cancellation of removal statute to require his deportation is clearly unconstitutionally retroactive. The reason for that, of course, is when he was convicted of one count of sex abuse, not two. He had been charged with two. It was completely non-deportable. Now, I think any case that we've had along that line, except for I want to see Valesko, resulted in the immigrant being allowed a 212c hearing. So he at least gets a 212c hearing, except if the Court wants to wait on the decision that's going to follow up in a DB, which the Court might want to do because that's been accepted in bank. Well, okay. We'll take your request under consideration. The issues are identical with regard to the equal protection argument. So whatever we do, we're going to have to see what the end bank court does in a DB on that issue. At least so far, Your Honor, it is the comparable grounds part of this. Yeah, the equal protection claim, right. There are other distinctions, though, in the case, and one of the funny ones that I have trouble reciting. It's on page 46 of the opening brief, and this was submitted on the record to the BIA. It concerns the Cervern-Espinoza case and the Fuentes-Campos precedent. And what it seems to suggest is that Mr. Prieto should be allowed a 212c hearing for other grounds than alleged in a DB. And for him, it would be he has non-proton 212c eligibility because he left the United States and came back in. And his outstanding precedent before the board that allows for non-proton 212c eligibility. I think he clearly qualifies for that. His trips outside of the United States are within that window if we need that. How do you square your position with the line of cases in our circuit post-St. Cyr that have confined the retroactivity analysis to cases where the defendant pled guilty and which specifically carve out cases like your client's where he went to jury trial? I understand, Your Honor. I hope easily, although there's no case clearly on point on this either. And, Your Honor, I would want to say to this court that after he went to trial on two counts of sex abuse and was acquitted of one, the acquittal vested his right to not be deported. Or at the worst, if the law were to change, at the worst, to have a 212c hearing. And, of course, also, and this was the transcript and the pleadings from the immigration service that they brought in to Judge Abraham, and he said, this man is not deportable. How else are you going to, what better way to form a settled expectation of non-deportability than for the people who would? Wait, wait, wait. The distinction in plea versus jury trial, as I understand our case law and St. Cyr, has always been that an alien may well have entered a plea of guilty to the charge in reliance on the knowledge that he couldn't be deported for it. But if an alien decides that he's going to run the gauntlet in front of the jury and take his chances, he certainly cannot claim that he relied on the availability of 212c relief, as can a person who pled. Can he? Mr. Prieto can, Your Honor. And the reason he can is, well, first, there's two things. First is the legal proposition that there has to be a quid pro quo plea in order to qualify for 212c relief. Right. But where's the quid pro quo if he puts the government to its proof? No, no. That's what I'm challenging, Your Honor. I don't believe there has to be a quid pro quo. Oh, I see. Okay. And I base that on the other case law other than St. Cyr, which discusses unconstitutional retroactivity. And none of these cases require a quid pro quo, such as use aircraft. And the other case is cited in the brief. Whether you call it quid pro quo or detrimental reliance, maybe I should ask the question that way. Where is his reliance under St. Cyr in distinguishing the cases that have said if you go to a jury trial, you can't claim entitlement to the St. Cyr rule? Because under St. Cyr, Your Honor, by electing a plea, a person qualified for 212c relief. Mr. Prieto, by going for trial, if convicted of both counts, would qualify for 212c relief. So it's a non sequitur for him to be entering a plea in order to qualify for 212c relief. The facts are just different because of how long ago he was convicted. Okay. And I think it's especially important, Your Honor, that he's completely non-deportable after his conviction of the one count. He's not subject to any kind of proceeding unless he commits a new crime. And, again, the Immigration Service says as much to Judge Abraham, circuit court judge in this city, who represented that he would have granted the JRAD otherwise. However, whether he granted the JRAD or whether he didn't, we've got a lot of precedent that suggests that doesn't make any difference, even those that have been granted haven't been followed, and we've said it's no problem. Well, Your Honor, I mean, look at our precedent. We've had cases where JRAD's been granted, and we've said, well, Congress changed their mind, and, therefore, it doesn't make a difference. The only precedent, Your Honor, I saw on that, on JRADs, on if a JRAD is granted on an aggravated felony is the Nguyen case that specifically addresses that case, that situation out of the Second Circuit. The cases that were cited by the government were inapposite to this case. It's not a situation where a JRAD could have been effective under any situation for the guys who were running around with the bombs. That was always something that's going to require the deportability in the sense that they can't get a JRAD for that particular offense. So I didn't see a case that said that if you get granted a JRAD before 1990, that's not effective against the later. Is that what we said in the bombing case, that the JRAD was an invalid JRAD? Yes, Your Honor, yes. I thought what we said was notwithstanding the JRAD, they could still be deported because of the fact that it involved possession of explosives. Yes, it's a very long case, Your Honor, and one of the points. I read every word of it, but I didn't read it the same way that you're urging me to read it. I was going to read it last night, Your Honor, but I do know when I went through it, that there is the statement that a JRAD never should have been granted to this person to begin with because he never qualified for one. And that was an important part of that case, I think. As I understand it, JRAD protects against certain grounds of removal or deportability at the time, and not necessarily against others. To the extent that a petitioner, a defendant in the criminal context, is subject to removal based on aggravated felony grounds, that's what JRAD speaks to. And as I recall, Hosepian, which I confess I haven't read as recently because I lived it the first time, it had more to do with the fact that Congress's change wasn't to expand the definition of aggravated felonies, but you had this whole new thing with regard to the explosives. So my impression of Hosepian was that it spoke not to the question of whether the aggravated felony removal was barred by the JRAD, but rather whether Congress had added a different additional ground for removal, which the JRAD never spoke to in the first place because it wasn't around at the time of the original criminal trial. So maybe there's a lot in Hosepian for each of us to figure out, but what's your take on what Hosepian, what the JRAD could and could not do in the context of the Hosepian case? Thank you, Your Honor. Gun charges or deportable, but they're not a ground of inadmissibility. And so the JRAD in Hosepian was ineffective because it purported to relieve someone of a crime of moral turpitude, and the JRAD doesn't apply to the crime of moral turpitude. I'm sorry. It does apply to the crime of moral turpitude, but it doesn't apply to the firearm ground. And then on the ---- Mr. Conway, let me see if I can help you a little bit here. Do you have your copy of Hosepian with you? No, Your Honor. You don't. Okay. Well, I'm looking at footnote 2 of 359F3rd. Let's see what the pin side is here. Footnote 2, it looks like 1149. And it says, Thank you. Although Hosepian was not a party to that case, the logic of our decision applies equally to him. Thus, the JRAD issued at the time of his sentencing does not bar the INS from deporting him on any ground subsequently enacted by Congress and made retroactive, which I think is the point that Judge Clifton was exploring with you in his question. It doesn't say that the JRAD was illegal. It just says it's not a bar. I understand, Your Honor. But just from memory, I can't give the court the case, the page number. But elsewhere in this case, it does say it maybe should have been permitted in the first place. And I did want to again mention the Nguyen case, Your Honor, because I think that case is specifically on point, even though it's from another circuit. And it talks about a JRAD still being effective against an aggravated felony ground, despite the expanded definition of aggravated felony. It specifically holds that. And it holds that a 1989 JRAD is effective many years later to preclude the deportability of Mr. Nguyen, N-G-U-Y-E-N, out of the second circuit. Mr. Conway, you and I are really reading the case differently. And I did read this yesterday. And I found at page 1157 the following language. It is therefore unavailing to argue, as Havisbian does, that Congress might not have considered the fact that the 1990 amendments would render deportable some aliens who previously had been non-deportable by virtue of a JRAD. I mean, that's consistent with footnote two, that notwithstanding the fact that a JRAD was issued, if Congress subsequently decides to make a retroactive change in the law, it can in essence overrule the JRAD that was issued. It doesn't mean that it was invalid when it was issued. It just simply says, notwithstanding the existence of it, the law still applies. I agree, Your Honor, but I still stand by what I said. I agree the case says that, but it also makes the other point as well. All right. Well, we can read it. I didn't find the language that you're urging on me. And those two clauses are consistent with my reading. So it is a long case. And let's return, Your Honor, if we may, to where we are. We're with Mr. Prieto, if we may for a minute, go back to 1989. And he's been told by the Immigration Service that he's not deportable, that he doesn't need a JRAD. So he's never even gotten one. So to that point, I don't know how much we need to make out of the Holston case, regardless of what it says. I mean, it is an in-bank opinion, which means something. It doesn't quite fit this factual situation, Your Honor, where ‑‑ Well, I guess the problem that I have is, yeah, it doesn't exactly fit this situation, but your argument is that it did fit the situation, and if it weren't for the government's argument, they would have got one, and therefore, because they didn't get one, they ought to be ‑‑ he ought to have some rights that we ‑‑ you want us to give him. And all the argument is, as I understood it, and I tried to look through this, wouldn't matter if he got one. And I call this Hovspian. You all call it something else. I'm new, so I don't know what I got. Regardless, Hovspian said, doesn't make any difference. Well, I'm rapidly running out of time, so I don't know if I should stand down or ‑‑ Well, if you want to respond to the judge's question, I'm sure he'd appreciate a reaction. All I can suggest, if the court would allow me to send you a one‑pager on how I read Hovspian, and that particular page that I'm talking about. That would not be an appropriate Rule 28J submission. We'll read the case, and we'll either find it or we won't. Okay. Thank you. Let's hear then from Mr. Duffy. May it please the Court, Counsel, I'm Edward Duffy, and I represent the Attorney General in this matter. Your Honor, it's the government's position that this Court's precedence decisions, bar relief in this case, and that the petition for review must be upheld. The issue of whether a judicial recommendation against the court ‑‑ The petition for review must be denied. It must be denied. We uphold it. You're not going to like the result. You don't want to win. You don't want to lose. Okay. Your Honor, I misspoke. All right. The issue of whether a JRAD applies in this case is without support in law or fact. It almost, in a way, is a red herring in the case because he was never eligible for a JRAD when he was convicted. Well, let me stop you there. Because I'll be honest, this is the thing that's really been eating me about this case because it seems to me that he's in front of a judge who's about to issue a JRAD and doesn't only because he's told by the INS agent it doesn't matter, he's not deportable because of this, so you don't need the JRAD. Is that what happened? Is that your understanding of the facts? That's my understanding of the facts is that at the time the INS had a chance to go into court when a JRAD was under consideration and either object to it or present evidence in the case. In this case, the INS made an accurate statement of the law as it existed at the time, which was this is an alien who has been in the United States for more than five years. Therefore, a conviction on one crime involving moral turpitude, if that's the way it was going to be interpreted, did not make him deportable at the time. Therefore, so but for that statement by the INS agent, I think that the sentencing judge made it very clear he was going to issue a JRAD, but he won't now because it's his understanding he doesn't need to. There's no point in it. And I think that's just about his exact language. That's correct, Your Honor. So if we say that if the judge hadn't been so informed, a JRAD would have been issued, that becomes for me the question, okay, if there's a JRAD that is issued, would it have effect today in preventing the removal? Well, the position of the government is no, and it's for two reasons. First, the court's case law on both Hoseapian and Koubian, which is cited in the Hoseapian case, and I'm not sure how to pronounce it either. I was there, and I don't know how to pronounce it, so that's fine. I was having trouble knowing what was being said right at first. Now I've got it. Go ahead. I think in light of the fact that Congress, at the time Congress made this an aggravated felony, made the sexual abuse of a minor an aggravated felony in 1996, JRADs had gone away by 1990. Well, no new JRADs were being issued. The old ones were not ineffective. They were not invalidated. Congress didn't try, and the regulation is expressed in such a way as to make it clear that they're not effective beyond this state, but something that had been issued before is still sitting there and still has life. And that is what the court spoke to in Koubian and Hoseapian, that there were two issues in both cases. One was, and they were actually in the same position as this alien. They were aliens who were in the United States for more than five years and were convicted of, at the time, one crime involving moral turpitude. And the JRAD probably issued an error in that case, but it issued. And then Congress again amended the – that's my understanding of the facts of the case. Congress then amended to make a separate grounds of removability for the weapons offenses and then made that retroactive again in 1988. It amended it in 1990 and made it retroactive and applied to those two people. This case is very similar in that regard, in that even if the JRAD had issued, Congress then in 1996, with JRADs no longer being applied, made a new grounds of – a new ground of removability, specifically sexual abuse of minor and made it an aggravated felony. And at that point, any effect that the JRAD would have, because it was issued based on a crime of moral turpitude, it would have been issued based upon a crime of moral turpitude and not based upon the fact it was an aggravated felony. Although they were available, JRADs were available for aggravated felonies at the time. And whether the judge would have issued it if he was eligible for it is a question that, while the judge says he would have, that was with one conviction. If he had been convicted on both counts, it's speculation as to whether or not a JRAD would have issued it. But he wasn't convicted on both counts. He wasn't convicted on both counts, but then he wasn't deportable either, Your Honor, being convicted on the one counts. In effect, the judge is really issuing an advisory opinion there as to what he would have done because it's a moot point. But I thought you said earlier that even if one had been issued, your position is that under our subsequent precedent, it wouldn't have mattered. He could still be deported. He could still be deported because it was new grounds of removability, specifically to sexual abuse of a minor. See, that piece, and I've struggled with the regulations on that. The regulations make specific reference to the one that talks about JRAD. I've been flipping through and I've lost my little tab, so I'll just do it from memory. It's expressed in terms of a specific section. It's like two, my memory's not going to serve that well, so I'll just, let me fake it. As I understood the effect of JRADs after the change in the law, when JRADs are no longer being issued, they were still effective insofar as they covered grounds that then existed for removal. Congress was entitled to make new grounds for removal. That's what Hosepian deals with because they added the firearm part. Congress could also expand the existing grounds or redefine the existing grounds, in particular what constitutes an aggravated felony. And the question this case poses for me is whether there's a difference between, with regard to the effectiveness of JRAD, where Congress has added something entirely new, such as the firearm provision, and where Congress has tinkered with the definition of aggravated felony, so put something new into the existing category to which a JRAD would be. JRADs were effective against that category. Now they're expanding the category. And in my mind, there arguably is a distinction between Congress's expansion of grounds of removability by adding something entirely new, i.e., firearm or explosives, or in tinkering with the existing definition for which JRADs covered. That's correct, Your Honor. Well, in this one, it seems to me that the additional ground that is the current petitioner problem comes more in the expansion of the existing ground for which a JRAD would have been effective. Well, which a JRAD could have been issued, I want to say. Right. Could have been issued. And if it had been issued, it would be effective. It would be effective, yes, Your Honor. So that takes me back to what happened at the time of the criminal conviction in 1989 or whenever it was. Because as I read that transcript, it seems very apparent. Now, it may have been there are things the agent could have said otherwise. But the agent basically said, don't issue it. It's not necessary. It is not deportable for this. And the judge says, okay, I would have issued it otherwise, but now I won't. Agent wasn't doing anything wrong. There's no misconduct, because that was the state of the law at the time. But if the agent doesn't affirmatively say that, then the JRAD does issue, and we're facing a different case today. I think we're facing a different case, but only to the extent that I would add the bifurcation of the new ground of removal. I think if you add a new ground that is an aggravated felony, but it's a whole new ground of removability. It says, this specific crime of sexual abuse of a minor is now an aggravated felony, which attaches other consequences besides just merely being a removability provision. That expresses Congress's intent at the time that this new specific ground sits separate and apart. While we put it in the aggravated felony category, it sits separate and apart. And I think that's the mistake of the case cited from the Second Circuit, is Nguyen. I think Nguyen collapsed and gave short shrift to this Court's decision. I can't pronounce that one, either. But that's the case that triggered some of these thoughts, because if you would follow that, that's what suggests, well, is there some ‑‑ I'm trying to reconcile, and I understand we're not bound by it, and we should critically examine Nguyen or whatever it's called. But if you follow that, I started thinking, well, can this be reconciled with Hosepian? And that's where I came up with the little hybrid I described a second ago about, well, maybe there's a difference between adding a whole new category such as the explosives and firearms and broadening the definition of aggravated felony. I think it sounds like the position you're really taking is less trying to distinguish between those categories and more suggesting that Nguyen just has it wrong. That's correct, Your Honor. Nguyen has it wrong, and it has it wrong because, again, when Congress in 1996 was legislating and applying retroactively and creating a whole new category, it would be a stretch to say that Congress didn't intend that category to apply to this situation and that the alien would be eligible for some form of relief under a JRAD, because it is a new category, it is a new offense added. It's just a matter of where you put it in the statute. Judge Clifton's questions cause me to ponder here. There always was deportability for rape, right? That was considered both an aggravated felony and a sexual offense, which was a ground for deportation. But then Congress decided that all sexual offenses, which included, in this instance, sexual abuse of a minor, which was only punishable by a 30-day jail term, which before had not been considered an aggravated felony, was now an aggravated felony. Correct, Your Honor. So what – I mean, is there a substantive distinction between expanding the category to include all sex offenses when some sex offenses were included before and adding a new category of explosives and firearms, which I assume had never been a ground before? Certain firearms offenses were a basis for movability. Well, if that's the case, then there isn't a distinction between what Congress did here. All Congress did was expand the names of offenses that could serve as the basis for deportation. In essence, though, they expanded the – because sexual abuse of a minor before, and this Court has at times found that the statutes aren't necessarily categorically make a person move. Yeah, but that gets into whether or not it's a crime of violence. You know, if it's a 12-year-old that you've gotten drunk and has no idea that you're abusing her, you know, what is that? Correct, Your Honor. But that's not what we're talking about here, is it? No, we're talking about – Congress basically said all sex offenses. If he had been convicted of two counts, he would have been removable, I believe, on committing two crimes of moral turpitude in this case. Right. He wasn't. He was convicted of one, and that did not make him removable. So, you know, in essence, you know, I go back to my original statement, which is the JRAD is indeed, in some respects, a red herring because it never issued. And it never issued because it wasn't required at the time. And if it had issued, the question is, is it merely advisory at that time, or is it more than that? And that was the question. I understand that point, but I am concerned about it. Because in a circumstance where it seems pretty plain that it was going to be issued but for the statement by the government that it's not necessary, it makes it hard for me to close my eyes to the fact that, gee, if the government doesn't speak up, it gets issued. And if it has an effect today, should we disregard it? In this case, it was the sentencing judge who actually relied upon the statement of the government. I don't know if you heard the last argument, but I was quizzical there as to whether it really made any difference. Here, it's pretty plain that the judge is going to issue it but for this. And that's why I'm willing to continue the examination and say, okay, suppose there is a JRAD there, which would have been there otherwise. Does it have an effect today against whatever he's been charged or was convicted for? It's our position that it would not have an effect today because while we can go and we have, I think, one round on whether a crime of moral turpitude, when it's converted to an aggravated felony, is a new basis for removability like firearms offense. It's our position that it is. That it becomes, that it wasn't, and that goes to the argument as we move down the road on this, and I'm not trying to change the subject, but it also goes to the availability of discretionary relief in this case because there is not a basis, it's not a basis for excluding it. Therefore, it doesn't have that effect on the availability of the discretionary relief either. So it is, indeed, much like a firearms offense in that it becomes a separate basis in and of itself for removability. The second issue is whether St. Cyr bars this court and this court's precedent decisions bar the court from ordering a 212c hearing in this case. In this case, the alien did not plead guilty at trial. There was no quid pro quo based upon the Supreme Court's St. Cyr opinion and this court's subsequent opinions. Holding that, that is what is required in this matter. Therefore, we'll stand on our brief on that analysis as to whether or not retroactivity applies. And as far as the equal protection case, as the court correctly pointed out, Abebe will probably control the outcome of that. And if not, we'd be stuck with Komen Erko at this point. And, of course, Abebe will eventually decide that issue. Putting this all back into perspective, wasn't this all a motion to reopen due to ineffective assistance of counsel? The motion to reopen was due to ineffective assistance of counsel. And so putting all this back in perspective, is this prejudicial, the fact that counsel did not introduce this transcript? Counsel argued that he should have an eligibility for 212c relief. And it's our position that since there is no, our position is that legally there was no, the JRAD would have, or the proposed JRAD would have no effect in this case, that there is no ineffective assistance of counsel. And that's a legal decision by counsel in the case as to what, whether it would be ineffective or not is a question that would be left to a State bar to determine as to what, whether it was a tactical decision in the case or whether it was a. But let's assume under the first prong of Strickland that it was. I think Judge Smith is asking you, was there prejudice under the second prong of Strickland versus Washington? We argue there was no prejudice because, in fact, the JRAD did not issue in this case, and he is removable under a new independent ground under an aggravated felony, and therefore he suffered no prejudice in this case as to removability and as to discretionary relief. Judge Tallman stole, there's two prongs, and you talked about one. Now he stole my question on the second prong, which I think counsel has to answer as well. It just means that I owe him a question. It doesn't worry me. All right. And for the reason stated in our briefing, the Army requested the court to deny the position. Thank you, Mr. Decker. Mr. Conrad? Thank you. I needed that breather, Your Honors. First on the Newen case, on the replay brief at page 4 at the bottom, it talks about expanded definition of aggravated felony. It states that the expanded definition of aggravated felony applies also to JRAD protection. And so if the JRAD would have been issued back in 1989 relying on Newen, my position would be that it would still be effective today. I, at some risk, am going to read to the court from Yacobian maybe what I was on my desk. There had been an argument that INS should have made that the destructive device conviction does not constitute a crime of moral perpetuity and the JRAD should have been disallowed. It wasn't made. Therefore, that was ruled moot. So that's all I can give. This must have been what I was thinking about. Was that the decision of the 90s or what was the year of that one? Oh, there's so many. This one's 24th, 3rd, 1, 1994. There's a whole series of them. I think that is probably where your recollection came from. Okay. And I'm wondering what else I possibly could tell the court. The government hasn't addressed the windows argument, the window where someone's deportable should be allowed to file for 212C under Estrada Torres and Fuente Campos. The board didn't address it. Ms. Hall, the prior counsel, didn't address it. That's the way to 212C eligibility, Your Honor. It's a way to remand to the board, not that we want that. We want termination. We want termination because this whole thing is unconstitutionally retroactive to tell a man he will not be deported, and then is it 16 years later, he's told he's going to be banished from the United States forever, and he cannot even ask for relief, relief that he didn't even need to request 16 years ago, but that he could have requested if he'd been convicted of both charges. It just seems like it's too much, Your Honor, to accept that as all right. And, you know, if there's an add-on to the judicial estoppel ground, it might be the government should have told Judge Abraham, but, you know, if this JRAD statute gets amended or if the aggravated felony ground gets expanded, we're going to take this guy down. We're going to deport him because sex abuses, you know, later laws have proven is an offense that is subject to becoming an aggregated felony. That wasn't stated to Judge Abraham. If it had been, I would suggest to the record's clear he would have issued the JRAD. Trial case, almond to their eyes. I just want to mention again, Your Honor, he got sentenced to five years and 10 months by, no, five years and eight months, and it was a drug case. He had no defense, so he went to trial. He was deportable always. He was an aggravated felon always. That is not to create with this, and thank you. Thank you very much, Mr. Conroy. The case just argued is submitted, and the last case on the calendar this morning is East Portland Imaging Center PC v. Providence Health System of Oregon.
judges: Tallman, Clifton, Smith